UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ERIKA RIVERA,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF MERCED, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:04-cv-6771-SMS<br><br>ORDER GRANTING THE MOTION OF DEFENDANTS CITY OF MERCED, POLICE DEPARTMENT, AND OFFICERS FOR SUMMARY JUDGMENT (DOC. 79)<br><br>ORDER GRANTING THE MOTION OF DEFENDANT ELOY ROMERO FOR SUMMARY JUDGMENT (DOC. 73) |

ORDER GRANTING DEFENDANT CITY'S REQUEST FOR JUDICIAL NOTICE (DOC. 84)

Plaintiffs are proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301.

The motion for summary judgment, or, alternatively, summary adjudication of Defendants City of Merced, City of Merced Police Department, and Officers Scott Skinner, Ray Sterling, and Daniel Dabney, as well as the motion for summary judgment or, alternatively, summary adjudication of Defendant Eloy Romero came on regularly for hearing on October 31, 2006, at 10:35 a.m. in Courtroom 7 before the Honorable Sandra M. Snyder, United States

1

Magistrate Judge. Norman C. Newhouse appeared on behalf of Plaintiff. Dale L. Allen of Low, Ball & Lynch appeared on behalf of Defendants City of Merced, City of Merced Police Department, and City of Merced Police Officers Scott Skinner, Ray Sterling, and Officer Dabney (City Defendants). Jeffrey R. Vincent, Deputy Attorney General, appeared on behalf of Defendant Eloy Romero. After argument, the Court directed the City Defendants to file on or before November 3, 2006, supplemental information regarding the affidavit for arrest warrant that was the subject of a request for judicial notice. Upon the filing of the supplemental information by Defendants on November 2, 2006, the matter was submitted to the Court.

BACKGROUND

Defendants City of Merced (City), City of Merced Police Department (Police), and Officers Scott Skinner, Ray Sterling, and Daniel Dabney (Officers) filed a notice of motion and motion, separate statement of undisputed facts, memorandum in support of the motion, declarations of Lesley L. Novotny and Antonio L. Casillas or Cadillac with exhibits, and request for judicial notice on July 28, 2006. Opposition consisting of the declaration of Norman Newhouse with exhibits, statement of disputed and undisputed facts, and memorandum in opposition were filed on September 2, 2006. A reply was filed on September 8, 2006.

Defendant Eloy Romero filed a notice of motion and motion for summary judgment, memorandum in support, statement of undisputed material facts, exhibit list and exhibits, and lodged deposition transcripts on July 25, 2006. Opposition in the form of the declaration of Norman Newhouse with exhibits, statement of

disputed and undisputed facts, and memorandum in opposition were filed on September 1, 2006. A reply was filed on September 7, 2006.

Plaintiff filed her original complaint on December 30, 2004. She filed a first amended complaint on May 20, 2005, in which she alleges six causes of action against "defendants, and each of them," including (1) assault by a peace officer; (2) battery by a peace officer; (3) false arrest with a warrant by a peace officer; (4) unnecessary delay in processing and releasing; (5) abuse of process; and (6) violation of her civil rights pursuant to 42 U.S.C. § 1983.

The complaint concerns Plaintiff's arrest for being an accessory after the fact of her son's murder of a Merced police officer and her subsequent custody; charges were filed and then eventually dismissed for lack of evidence. Defendant Officer Skinner applied for the arrest warrant which led to Plaintiff's arrest. City officers who are no longer in this action arrested Plaintiff in accordance with the warrant. Defendants Officers Sterling and Dabney interviewed Plaintiff after she was arrested and brought into the police station.

It was stipulated on June 22, 2006, that Defendants County of Merced, County of Merced Sheriff's Department, and Officer Vernon Warnke be dismissed pursuant to a settlement. The settlement was determined to be in good faith on the same date. By informal telephonic conference held on November 8, 2006, the Court confirmed that all defendants other than the moving defendants have been dismissed from the lawsuit.

///

3

## SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

Where a party with the ultimate burden of persuasion at trial as to a matter moves for summary judgment, it must demonstrate affirmatively by evidence each essential element of its claim or affirmative defense and must establish that there is no triable issue of fact as to each essential element such that a rational trier of fact could render a judgment in its favor. Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003). If a party moves for summary judgment with respect to a matter as to which the opposing party has the ultimate burden of persuasion at trial, then the moving party must show that the opposing party cannot meet its burden of proof at trial by establishing that there is no genuine issue of

material fact as to an essential element of the opposing party's claim or defense; the moving party must meet the initial burden of producing evidence or showing an absence of evidence as well as the ultimate burden of persuasion. <u>Nissan Fire Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000). In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the opposing party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. <u>Id.</u> (citing <u>High Tech Gays v. Defense Indus. Sec. Clearance Office</u>, 895 F.2d 563, 574 (9th Cir. 1990)). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. <u>Id.</u>

However, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Id</u>. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id</u>. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for

entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

   If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

   In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

1  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)

2  advisory committee's note on 1963 amendments). The evidence of

3  the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255,

4  and all reasonable inferences that may be drawn from the facts

5  placed before the court must be drawn in favor of the opposing

6  party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v.</u>

7  <u>Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam)).

8  Nevertheless, it is the opposing party's obligation to produce a

9  factual predicate from which an inference may be drawn. <u>Richards</u>

10 <u>v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal.

11 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Although the

12 Court must not weigh the evidence, the Court must draw reasonable

13 inferences; evidence that is too insubstantial or speculative may

14 be insufficient to establish the existence of a genuine issue of

15 material fact. <u>Coca-Cola Co. v. Overland, Inc.</u>, 692 F.2d 1250,

16 1255 (9th Cir. 1982).

17     The Court is not obligated to consider matters that are in

18 the record but are not specifically brought to its attention; the

19 parties must designate and refer to specific triable facts. Even

20 in the absence of a local rule, for evidence to be considered,

21 the party seeking to rely on it must specify the fact by

22 indicating what the evidence is or says and must indicate where

23 it is located in the file. Although the Court has discretion in

24 appropriate circumstances to consider other material, it has no

25 duty to search the record for evidence establishing a material

26 fact. <u>Carmen v. San Francisco United School Dist.</u>, 237 F.3d 1026,

27 1029 (9th Cir. 2001).

28 ////

1    <u>MOTION OF DEFENDANTS CITY, POLICE, AND OFFICERS</u>

2    I. <u>Late Opposition</u>

3    Defendants request that the Court ignore Plaintiff's

4    opposition, which Defendants represent was filed thirteen days

5    before the hearing date on September 2, 2006, after the close of

6    business on the Friday before the Labor Day weekend. A

7    declaration of Dale L. Allen, Jr., states that although the proof

8    of service of Plaintiff's hard copy was dated August 31, 2006,

9    the postmark was September 5, 2006, mailed parcel post.

10   A court has inherent power to control its docket and the

11   disposition of its cases with economy of time and effort for both

12   the court and the parties. <u>Landis v. North American Co.</u>, 299 U.S.

13   248, 254-255 (1936); <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260 (9th

14   Cir. 1992). Further, a court has broad discretion to interpret

15   and apply its local rules. <u>Dulange v. Dutro Construction, Inc.</u>,

16   183 F.3d 916, 919 n. 2 (9th Cir. 1999). Local Rule 78-230 requires

17   that opposition to a motion be filed not less than fourteen days

18   preceding the hearing date and served not less than fourteen or

19   seventeen days (personal service, or electronic and mail,

20   respectively) preceding the hearing date. The Court in its

21   discretion may refuse to consider matters that are not timely

22   filed as a result of inexcusable neglect. <u>Cusano v. Klein</u>, 264

23   F.3d 936, 950-51 (9th Cir. 2001) (not considering evidence

24   submitted late in response to a motion for summary judgment).

25   Here, the apparent tardiness was brief and did not result in

26   any prejudice. The Court exercises its discretion to deny the

27   request to disregard the late opposition.

28   ////

1    II. State Tort Claims Act

2    Defendants argue that they are entitled to judgment as a

3 matter of law on Plaintiff's five state tort claims against

4 Defendants City, Police, and Officers because Plaintiff did not

5 comply with the Tort Claims Act, which requires that a claim be

6 submitted to identify with particularity the entities,

7 individuals, and causes of action that Plaintiff later alleges in

8 her complaint. Specifically, Defendants argue that Plaintiff

9 filed a claim naming only the Merced Police Department, but filed

10 suit against the City of Merced and Officers Skinner, Sterling,

11 and Dabney; she added causes of action that were not included on

12 her tort claim; and she did not allege facts demonstrating or

13 excusing compliance with the Tort Claims Act in her complaint.

14    With respect to public entities, Cal. Govt. Code § 945.4

15 states:

16        Except as provided in Sections 946.4 and 946.6, no
      suit for money or damages may be brought against a
17     public entity on a cause of action for which a claim is
      required to be presented in accordance with Chapter
18     1 (commencing with Section 900) and Chapter 2 (commencing
      with Section 910) of Part 3 of this division until a
19     written claim therefor has been presented to the public
      entity and has been acted upon by the board, or has
20     been deemed to have been rejected by the board, in
      accordance with Chapters 1 and 2 of Part 3 of this
21     division.

22    A failure to present a claim is fatal to a claimant's cause

23 of action because failure to allege presentation results in a

24 failure to state a cause of action. State v. Superior Court

25 (Bodde), 32 Cal.4th 1234, 1239 (2004). Under California law, a

26 failure to file a required claim warrants a grant of summary

27 judgment. TrafficSchoolOnline, Inc. v. Clarke, 112 Cal.App.4th

28 736, 738 (2003.) Because compliance is an essential part of

1  Plaintiff's claim, it must be the burden of the Plaintiff to show

2  either satisfaction of the statutory prerequisites or sufficient

3  facts to justify noncompliance on the ground of excuse, waiver,

4  or estoppel. <u>State v. Superior Court (Bodde)</u>, 32 Cal.4th 1234,

5  1239 (2004) (essential element of cause of action); <u>see</u>, 1 CEB

6  California Government Tort Liability Practice § 5.18 (2006).

7      A. <u>Defendant City of Merced</u>

8      With respect to presenting a claim to Defendant City of

9  Merced, except for specified exclusions not pertinent here, Cal.

10 Govt. Code § 905 specifically requires the presentation of a

11 claim against local public entities. Cal. Govt. Code § 915(a)

12 mandates that a claim shall be presented <u>to</u> a local public

13 entity; it describes the means of doing so as by delivering it to

14 the clerk, secretary , or auditor thereof, or mailing it to the

15 clerk, secretary, auditor, or governing body at is principal

16 office. Section 915(d) provides in pertinent part:

17     A claim... shall be deemed to have been presented in
       compliance with this section even though it is not
18     delivered or mailed as provided in this section
       if it is actually received by the clerk, secretary,
19     auditor, or board of the local public entity....

20     Here, Plaintiff alleged compliance with the claims statute

21 in the complaint.[1] Plaintiff filed a claim form with the Central

22 San Joaquin Valley Risk Management Authority that was received on

23 September 27, 2004. (Decl. of Lesley L. Novotny, Ex. A.) The

24 claim was against the Merced Police Department and District

25 _____

26     [1] The unverified amended complaint filed on May 20, 2005, states:
           Defendants City of Merced and Merced Police Department are... public entities, being an incorporated city
27 and its police department in the State of California. Plaintiff is required to, and has complied with the Government
   Tort Claims act by filing a claim against the City of Merced. Said claim was rejected on October 22, 2004. (Cmplt. ¶
28 6.)

1  Attorney Gordon Spencer; names of other employees were not yet
2  known. The substance of the claim was infringement of
3  constitutional rights in the form of false arrest, false
4  imprisonment, and false criminal charges.

5      Preliminarily the Court notes that at the hearing on the
6  motion, counsel for the City Defendants explained that due to the
7  identity of the governing bodies and risk management authority
8  for both the City and the Police Department, it is not disputed
9  that both Defendants City and Police were on notice, and further
10 that the officers were in the course and scope of employment.
11 Therefore, it appears that Defendants are not suggesting that
12 there was a complete lack of any filing of a tort claim that gave
13 notice to Defendant City of Merced. This is consistent with the
14 case law that has developed concerning the notice function of
15 filing a tort claim. See, Carlino v. Los Angeles County Flood
16 Control District, 10 Cal.App.4th 1526 (1992) (presentation to a
17 county board of supervisors was held to be sufficient where the
18 target agency involved was a flood control district that was
19 separate but was ultimately controlled by the board of
20 supervisors, there was no prejudice, and the notice purpose was
21 satisfied); Elias v. San Bernardino County Flood Control
22 District, 68 Cal.App.3d 70 (1977) (reasoning that presentation to
23 the county board of supervisors of a claim concerning condition
24 of a road that was owned by a flood control district was
25 substantial compliance because the county board and county
26 officers were responsible for the district and apparently
27 qualified as the governing body of the district); and Peters v.
28 City and County of San Francisco, 41 Cal.2d 419, 426-27 (1953)

11

1  (applying the doctrine of substantial compliance where although

2  the original claim was filed with the wrong entity (the city

3  controller), a carbon copy was delivered to the proper entity

4  (the board of supervisors), and the city attorney was also

5  copied; because the purpose of the requirement of presenting a

6  written claim is to give the appropriate municipal body timely

7  notice of the accident and an opportunity to investigate it,

8  providing the carbon to the board and city attorney met that

9  purpose).

10       It is Plaintiff's burden to show presentation of a claim

11  against the entity. Plaintiff has demonstrated presentation of a

12  claim to the Defendant City and the Defendant Police.

13       B. <u>Officers Skinner, Sterling, Dabney</u>

14       Although a claim need not be presented to a public employee

15  for an injury resulting from an act or omission in the scope of

16  his public employment, Cal. Govt. Code § 950, a claim against a

17  public employee is barred if an action against the employing

18  public entity is barred, Cal. Govt. Code § 950.2. Further, a tort

19  claim against the public employer must be denied before a lawsuit

20  against the public employee may be maintained. Cal. Govt. Code §

21  950.6. A police officer is a public employee entitled to the

22  protection of the Tort Claims Act. <u>Randle v. City and County of</u>

23  <u>San Francisco</u>, 186 Cal.App.3d 449, 455-56 (1986).

24       Here, the evidence warrants the inference that the action of

25  the officers in question was undertaken within the scope of the

26  employment. Further, there is no evidentiary basis for a

27  conclusion that the claim against the officers' alleged employer,

28  namely, the Merced Police Department or Defendant City, is

12

barred.

With respect to the failure to name the individual officers in the tort claim, Cal. Govt. Code § 910 states:

> A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following:
> (a) <u>The name</u> and post office address <u>of the claimant.</u>
> (b) The post office address to which the person presenting the claim desires notices to be sent.
> (c) <u>The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.</u>
> (d) <u>A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.</u>
> (e) <u>The name or names of the public employee or employees causing the injury, damage, or loss, if known.</u>
> (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case. (Emphasis added.)

Here, the claim named Gordon Spencer and further stated, "The names of other employees are not yet known." The claim was not a sworn or notarized document and does not appear to be testimonial in nature. However, Plaintiff testified in her deposition that she did not know the names of the officers who came to arrest her (Dep. p. 30) or to interrogate her (Dep. pp. 34-35). It thus appears that the evidence supports a reasonable inference that Plaintiff did not know the names of Officers Sterling and Dabney. Further, given the nature of the arrest warrant process, it is reasonable to infer that for some period of time, Plaintiff lacked information regarding the identity of

1  Officer Skinner.

2      In any event, even if the evidence does not warrant an

3  inference that Plaintiff lacked knowledge of Skinner's name when

4  the tort claim was filed, the failure to name Skinner in the

5  claim does not render Plaintiff's compliance insubstantial. A

6  court may hold that a claimant substantially complied with the

7  statutory requirements for a valid claim, and thus the claim is

8  valid, if 1) a claim has been presented such that there is some

9  compliance with all the statutory requirements, and 2) despite

10 technical deficiencies, the claim is sufficient to give the

11 public entity timely notice of the nature of the claim to permit

12 it to investigate adequately and settle it without the expense of

13 litigation if appropriate. City of San Jose v. Superior Court, 12

14 Cal.3d 447, 454-57 (1974); Santee v. Santa Clara County Office of

15 Educ., 220 Cal.App.3d 702, 713-14 (1990).

16     Here, the Plaintiff achieved some compliance by naming the

17 District Attorney and stating that other names were unknown. The

18 claim as presented was sufficient to put the Defendants on notice

19 of the date and location of the loss and the general facts of the

20 claim. The description of the claim in the tort claim filed

21 against Defendants Merced Police/City and the District Attorney

22 is virtually identical to that which was filed with the County

23 and analyzed by Judge Coyle in his order of May 13, 2005, in

24 which he ruled that the claim was sufficient to permit

25 investigation of the claim and a determination of it. (Order p.

26 13.) As is noted in Stockett v. Association of California Water

27 Agencies 34 Cal.4th 441, 447 (2004), relied on by Judge Coyle,

28 the claim need not specify each act or omission, but rather

14

1  should set forth the fundamental actions of the defendants; the
2  subsequent complaint should allege only factual bases for
3  recovery that are fairly reflected in the written claim, but it
4  may elaborate or add further detail. Although no case is found
5  applying the substantial compliance doctrine to the naming of
6  defendants, the Court concludes that although Plaintiff did not
7  name Officer Skinner in the claim, Plaintiff's claim
8  substantially complied with the requirements of § 910.

9               C. New Causes of Action

10      Defendants argue that Plaintiff added new causes of action
11  to the complaint that were not in the claim. As Judge Coyle ruled
12  with respect to the County's claim and the original complaint,
13  the precise nature of the causes of action is not determinative;
14  rather, it is the factual and not the legal bases that are the
15  concern reflected in the requirements of the Tort Claims Act.
16  (Order of May 13, 2005 p. 13.) Here, Plaintiff's amended
17  complaint sets forth essentially the same claims as the original
18  complaint. Further, the claims all concern the legality of
19  Plaintiff's arrest, imprisonment, and criminal charges, which in
20  turn constitute the essential factual matters upon which the
21  causes of action are based.

22      Thus, the Court concludes that there is no undue variance
23  between the claims alleged in the first amended complaint and the
24  tort claim.

25      In summary, the Court concludes that Defendants have not
26  demonstrated that they are entitled to summary judgment or
27  adjudication based on any lack of compliance by Plaintiff with
28  the state tort claims statute concerning her claims against

15

1 Defendants City, Police, or officers.

2    III. <u>Assault and Battery</u>

3    Defendants contend that because none of the individually

4 named defendants participated in Plaintiff's arrest, she does not

5 have a claim for assault or battery based on her arrest.

6 Plaintiff stated that the argument that the first cause of action

7 for assault and battery is without merit is not opposed. (Opp. p.

8 9.) At the hearing on the motion, Plaintiff's counsel expressly

9 conceded that there are no facts to support an assault and

10 battery claim or a claim of unreasonable use of force with

11 respect to Plaintiff's arrest and being taken to jail. When asked

12 if, separate and apart from an unreasonable use of force, there

13 were any facts to support a claim of any other form of assault

14 and battery, Plaintiff's counsel responded that his only argument

15 was that if one is incarcerated on a bogus warrant, it is an

16 unreasonable use of force. However, as will be discussed in

17 detail hereinbelow, there is no issue of fact as to the validity

18 of the warrant. It thus does not appear that Plaintiff has set

19 forth facts to support a claim of assault or battery against any

20 Defendant.

21    The Court concludes that Plaintiff has not set forth facts

22 raising an issue of fact as to Plaintiff's being the victim of an

23 assault (first claim) or battery (second claim). Accordingly, the

24 City Defendants are entitled to judgment on Plaintiff's first and

25 second claims, assault and battery, respectively.

26    IV. <u>False Arrest</u>

27    Plaintiff claims that Defendants caused her to be wrongfully

28 arrested because they intentionally authorized, encouraged,

16

1   directed, and assisted a peace officer in procuring an unlawful

2   arrest by knowingly providing false information of a character

3   that could be expected to stimulate an arrest by knowingly,

4   oppressively, maliciously, and despicably concealing true facts

5   and providing false facts to obtain a warrant; and they falsely

6   obtained a warrant. (FAC ¶¶ 11, 35.) Plaintiff alleges that

7   Defendants acted in bad faith, with malice, and without a

8   reasonable belief that the warrant was valid; Defendants

9   purposely withheld exculpatory evidence from the magistrate who

10  issued the warrant and failed to exercise ordinarily intelligent

11  and informed judgment.

12      California law defines the tort of false imprisonment as the

13  intentional confinement of another against the person's will; the

14  elements are 1) nonconsensual, intentional confinement of a

15  person, 2) without lawful privilege, 3) for an appreciable period

16  of time, however, brief. Easton v. Sutter Coast Hosp., 80

17  Cal.App.4th 485, 496 (2000). False arrest is a form of false

18  imprisonment and not a separate tort. Collins v. City and County

19  of San Francisco, 50 Cal.App.3d 671, 674 (1975). A person is

20  liable for false imprisonment if he or she authorizes,

21  encourages, directs, or assists an officer to do an unlawful act,

22  procures an unlawful arrest, without process, or participates in

23  the unlawful arrest. Du Lac v. Perma Trans Products, Inc., 103

24  Cal.App. 3d 937, 941 (1980) (overruled on another point

25  concerning the privilege of a private person to communicate

26  information to the police in Hagberg v. California Federal Bank

27  FSB, 32 Cal.4th 350, 377 (2004)). Wilfully, maliciously, or

28  knowingly giving the police wrong information of a character that

foreseeably could be expected to induce an arrest, such as
identifying the wrong person as a criminal, for the purpose of or
with the intent to induce an arrest and prosecution, or with
knowledge that confinement will, to a substantial certainty,
result from it, constitutes false imprisonment because the
provider of information is aiding and assisting in the arrest and
is performing the necessary active role in bringing about the
arrest. Du Lac, 103 Cal.App.3d at 942-43.

Accordingly, a California cause of action for false arrest
with a warrant has the following elements: 1) Defendant
wrongfully arrested the Plaintiff or intentionally caused
Plaintiff to be wrongfully arrested; 2) the warrant was invalid
because of false facts; 3) Plaintiff was actually harmed; and 4)
Defendant's conduct was a substantial factor in causing
Plaintiff's harm. See, CACI No. 1405 (January 2006).

Further, if the Defendant is a police officer, Cal. Civ.
Code § 43.55(a) applies and provides:

> (a) There shall be no liability on the part of, and no
> cause of action shall arise against, any peace officer
> who makes an arrest pursuant to a warrant of arrest
> regular upon its face if the peace officer in making
> the arrest acts without malice and in the reasonable
> belief that the person arrested is the one referred to
> in the warrant.

Further, Cal. Pen. Code § 847(b) provides:

> (b) There shall be no civil liability on the part of,
> and no cause of action shall arise against, any peace
> officer or federal criminal investigator or law
> enforcement officer described in subdivision (a) or (d)
> of Section 830.8, acting within the scope of his or her
> authority, for false arrest or false imprisonment
> arising out of any arrest under any of the following
> circumstances:
>       (1) The arrest was lawful, or the peace
> officer, at the time of the arrest, had reasonable
> cause to believe the arrest was lawful.

(2) The arrest was made pursuant to a charge made, upon reasonable cause, of the commission of a felony by the person to be arrested.

Defendants argue that there is no evidence that the warrant was based on false facts known to be false by the officers at the time of the warrant application; the warrant was supported by probable cause, and thus the arrest was lawful; and Plaintiff is unable to prove malice.

A. Probable Cause

1. Legal Standard

The law pertinent to a determination of reasonable or probable cause to arrest has recently been summarized:

Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt. (People v. Mower (2002) 28 Cal.4th 457, 473, 122 Cal.Rptr.2d 326, 49 P.3d 1067.) This is an objective standard. (People v. Adair (2003) 29 Cal.4th 895, 904-905, 129 Cal.Rptr.2d 799, 62 P.3d 45.) Where the facts are undisputed, the issue of reasonable cause for an arrest is a question of law. (Giannis v. City and County of San Francisco (1978) 78 Cal.App.3d 219, 224-225, 144 Cal.Rptr. 145.)

O'Toole v. Superior Court, 140 Cal.App.4th 488, 511 (2006), rev. denied September 20, 2006. An officer may rely on information communicated to him by fellow officers to establish probable cause to arrest. People v. Willis, 28 Cal.4th 22, 48 (2002). Absent additional evidence, because the issue of reasonable cause to arrest involves an objective standard, there can be no false arrest if the officers had at least one reasonable ground to arrest an individual. O'Toole v. Superior Court, 140 Cal.App.4th 512.

Here, the offense for which Plaintiff was arrested was a violation of Cal. Pen. Code § 32, which provides:

19

1
2
3
4

> Every person who, after a felony has been committed,
> harbors, conceals or aids a principal in such felony,
> with the intent that said principal may avoid or escape
> from arrest, trial, conviction or punishment, having
> knowledge that said principal has committed such felony
> or has been charged with such felony or convicted
> thereof, is an accessory to such felony.

5              2) <u>Facts</u>

6      It is undisputed that Cuitlahuac "Tao" Rivera (Tao) was

7  identified as a suspect in the murder of Merced Police Officer

8  Stephan Gray; surveillance was being conducted on April 16, 2004,

9  to locate Tao, and Defendant Merced Police Department was

10 involved in the investigation and surveillance. Plaintiff Erika

11 Rivera is Tao's mother.

12              a. <u>Surveillance</u>:

13     Skinner's deposition testimony establishes that it was

14 broadcast over the police radio before he arrived at Midge Street

15 on the sixteenth that Tao was in front of 2560 Midge Street,

16 Number 20. (Decl. of Newhouse, Ex. 6, p. 16.) When he arrived, he

17 learned via police radio from someone at the location that Tao

18 was running. (<u>Id.</u> p. 18.) Skinner observed a man in a black

19 hooded sweatshirt with the hood up running from the area and

20 being chased by two agents, but Skinner lost sight of him. (<u>Id.</u>

21 p. 19-20, 28-29.) He could not tell who the man was. (<u>Id.</u> p. 29.)

22 Skinner went over to another area a couple of minutes later where

23 the man was seen and observed several other officers arriving.

24 (<u>Id.</u> pp. 23, 27.) Skinner later learned that the man ran through

25 or over a fence. (<u>Id.</u> p. 22.) They set up a perimeter around four

26 apartment complexes. (<u>Id.</u> p. 39.) From his own experience,

27 Skinner understood that Tao was outside the apartment, took off

28 running, and there was a chase after him in which the area was

1  searched. (Id. p. 31.) Skinner did not see the man in the
2  sweatshirt again during the time that the perimeter was set up,
3  and he did not see the sweatshirt after it was off the man. (Id.
4  pp. 40, 81-82.) He estimated that the search lasted an hour or
5  two. (Id. p. 41.) Skinner was at the scene until late afternoon,
6  saw at least eight SWAT team members searching for the person in
7  the black sweatshirt, and about twenty law enforcement personnel.
8  (Id. p. 35, 37.)

9      Romero testified that with a clear view from a distance of
10  150 feet he observed the height of the person in the black
11  sweatshirt; he was able to see the person's face and recognized
12  it from pictures as Tao's. (Newhouse Decl., Ex. 2, Dep. of Romero
13  pp. 17-18, 24-25, 40, 47.) He observed a picture of Plaintiff
14  later. (Id. pp. 48-49.) Dispatch from Merced Police stated that
15  they had just received an anonymous 911 telephone call saying
16  that Tao was at the Midge apartments. (Id. p. 67.)

17      Agent Alfredo Cardwood also testified to observing Tao and
18  Plaintiff together while with Romero. (Newhouse Decl., Ex. 1,
19  Dep. of Cardwood, pp. 17-18, 20.) He got a good look at the man's
20  face. (Id. p. 21.)

21                          b. Arrest Warrant

22      It is undisputed that Skinner was assigned to write or apply
23  for a warrant for Plaintiff's arrest, and that Detective Skinner
24  was informed that Tao was a suspect in Gray's murder. Skinner
25  testified that Defendant Commander Martin informed him it was for
26  aiding and assisting her son in connection with the murder of
27  Officer Gray. (Dep. p. 79.)

28      Skinner testified that later around 8:00 p.m. on the

sixteenth at the Merced Police Department he was told by
supervisor Eloy Romero over the telephone that the man in the
sweatshirt was Tao. (Dep. of Skinner pp. 29-30.) The basis for
the warrant Martin requested was what had gone on earlier in the
morning; although Skinner could not remember Martin's exact
words, what went on earlier in the morning was that Plaintiff had
been seen with Tao by Defendant Agent Romero. (Id. p. 79.)
Skinner was asked if he had told the examiner at deposition
everything on which he based his statement (Exhibit 6, to the
deposition, apparently his affidavit for probable cause which
appears in the record of this motion as the basis for Defendants'
request for judicial notice, Ex. A); he replied that he had.
(Dep. pp. 84-85.)

    Commander Martin testified that he discussed with Skinner
the probable cause facts for the warrant, including Warnke's
visit to Plaintiff and his transmission of information to her
that her son was wanted and that her assistance would constitute
criminal aiding and abetting; identification of the man with
Plaintiff on Midge Street as her son, Tao, by two agents
(Cardwood and Romero) from the Department of Justice who had a
"high comfort level" with their identification; and Plaintiff's
and Tao's having walked off together from the apartment. (Dep. of
Martin pp. 7-9, 26.) Martin also testified that Warnke's visit to
Plaintiff was documented in a report authored by Detective
Sterling stating that Warnke contacted Plaintiff at about eleven
in the evening on April 15, 2004, and explained in English and
Spanish that her son was wanted and that she would be arrested
for any assistance in eluding the police; she understood. (Dep.

22

pp. 90-91.) Further, Sterling testified that Warnke told him that he had explained it in English and Spanish and that Plaintiff had understood. (Decl. of Novotny, Ex. F, Dep. of Ray Sterling p. 59.)

The Court grants Defendants' request for judicial notice of Defendant Skinner's affidavit. The Court may take judicial notice of court records. Fed. R. Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989 F.2d 331, 333 (9th Cir. 1993); <u>Valerio v. Boise Cascade Corp.</u>, 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), <u>aff'd</u>, 645 F.2d 699 (9th Cir. 1981).

Skinner's subscribed and sworn affidavit dated April 16, 2004, states that it was subscribed and sworn to the Merced County Magistrate at 10:47 p.m. The affidavit stated that after Officer Gray's murder on April 15, 2004, Detective Gorman informed Skinner that two witnesses observed Tao raise a handgun and fire twice at Gray; they identified him in a photographic lineup. Sergeant Warnke of the Merced County Sheriff's Department told Skinner that on April 15, 2004, at approximately 2300 hours, he made contact with Plaintiff at her address in Merced, informed her in English and Spanish that her son was wanted for Gray's murder and that she would be arrested if she assisted him in any way; she acknowledged that she understood. At approximately 8:00 p.m. on April 16, Skinner spoke with Defendant Agent Eloy Romero of the Department of Justice B.N.E. Division, who informed Skinner that he saw Plaintiff standing outside the Midge Avenue residence when Tao walked up, entered the residence, exited the residence, then entered again, then exited with his girlfriend, met up with Plaintiff, and all three of them started to walk away

1  from the residence together. As undercover officers approached
2  the area, Tao ran off, eluded officers, and remained at large. A
3  criminal complaint was being sought against Tao for the murder.

4       Skinner opined that based on the aforesaid facts, he
5  believed that probable cause existed to arrest Plaintiff for the
6  crime of violating California Pen. Code § 32, accessory to a
7  felony; he believed that there was a great possibility that
8  Plaintiff was assisting Tao in leaving the area or was arranging
9  his transportation out of the area at the time.

10      Merced Police Commander Martin testified that he had
11 received information that persons associated with Tao, including
12 Plaintiff, were hiding him and transporting him. Once source was
13 an anonymous telephone call that came through late on the
14 fifteenth or early in the morning on the sixteenth on a business
15 line, was not recorded, traced, or documented, and in which a
16 woman stated that Plaintiff was going to get her son out of
17 Merced and should be watched. (Decl. of Newhouse, Ex. 4, Dep. of
18 Martin, pp. 83-85, 75.) Martin happened to answer the telephone
19 call, which was not routed through the dispatch center, and he
20 held on to the generic information; they were already watching
21 Plaintiff as a person of interest. Further, they had sent out
22 Warnke and his crew for a first contact. (Id. p. 87-89.) Martin
23 did not testify that he had told Skinner about this first
24 anonymous telephone call, and Skinner did not mention it in his
25 deposition. Martin testified that he did not remember the exact
26 words of what he had told Skinner, but he did recall discussing
27 the probable cause facts. After Tao was observed at and near the
28 Midge Street apartment with Plaintiff and walking off together,

and after a search for him lasting an hour or two, it was
concluded that Tao had escaped the perimeter. (Id. pp. 33-42.)
Martin did not know any additional facts other than his testimony
that provided the basis for Skinner to opine that there was a
great possibility Plaintiff was assisting her son. (Id. p. 42.)
Antonio L. Casillas, a police officer and inspector in the San
Francisco Police Department Homicide Detail, stated in his
declaration that in applying for the warrant, Skinner and the
Merced Police Department proceeded in accordance with the
standard of care expected of police officers seeking a warrant
before a magistrate. (Decl. ¶ 1.) He stated that Skinner was
entitled to rely on what was essentially the information he
mentioned in the affidavit and the anonymous telephone call
received before the alleged sighting of Tao to the effect that
his mother was going to try to get him out of Merced. (Decl. p.
2.)

    In his deposition,[2] Casillas related that he originally
opined that the warrant was based on probable cause due to the
murder, advice to Plaintiff regarding Tao's being wanted and any
assistance being a crime, and officers' observations of Plaintiff
assisting Tao. (Dep. of Casillas p. 17.)

    Martin testified that a document indicated that Plaintiff
was arrested by the Merced Police Department SWAT team led by

---

[2] Defendants offered only Casillas' declaration in support of the motion; Plaintiff offered his deposition, which is consistent with his opinion as stated in his declaration. The deposition terminated when Casillas, an expert witness disclosed only on the standard of care with respect to the warrant, was instructed by counsel for Defendants not to answer questions regarding the typicality and mode of surveillance of persons because it was outside the scope of disclosure of his expertise. (Dep. of Casillas pp. 28-34.) The lack of cross-examination of Casillas on his subject of expertise does not affect the evidentiary status of his declaration; and it was Plaintiff's counsel, not Defendants' counsel, who terminated the deposition without asking further questions within the scope of disclosed expertise. (Dep. p. 33.)

1  Sergeant Williams. (Dep. p. 96.) Martin's responsibility was
2  being in charge of the search for Tao. (Dep. p. 14.)

3      Officer Sterling testified that he did not participate in
4  the arrest of Plaintiff. (Dep. p. 62.)

5                          3. <u>Analysis</u>

6      Skinner's affidavit contains sufficient facts to cause one
7  to entertain a reasonable and strong suspicion that Plaintiff had
8  committed a violation of Cal. Pen. Code § 32.

9      Skinner was told by a detective that two witnesses had
10 observed Tao raise a gun and fire twice at Officer Gray, who
11 subsequently died of a gunshot wound; further, he was informed
12 that the witnesses also made a positive identification of Tao in
13 a photo line-up. These data warrant a reasonable belief that Tao
14 committed homicide, and thus that a felony had been committed.

15     Skinner also was told by Warnke that shortly following the
16 homicide, he had informed Plaintiff in English and Spanish that
17 her son was wanted for the murder and that if she assisted, she
18 would be arrested. Further, Warnke told Skinner that Plaintiff
19 acknowledged that she understood. These facts warrant a strong
20 and reasonable suspicion that Plaintiff knew that a felony had
21 been committed and that her son had committed the felony.

22     Skinner was told by Romero, a special agent, that he saw
23 Plaintiff standing outside when Tao approached, entered the
24 residence, came out, re-entered, and exited with his girlfriend,
25 and met up with his mother; then all three started to walk away
26 from the residence together. Reliance on Romero's sighting was
27 reasonable given Skinner's own personal knowledge of the
28 surveillance on the day in question. Further, there does not

26

1  appear to be any evidence suggesting that Skinner's reliance on
2  Romero's identification was unreasonable at the time.

3       These facts warranted a reasonable belief that Plaintiff had
4  assisted her son. The gist of the offense proscribed by § 32 is
5  that the accused harbors, conceals, or aids the principal with
6  the requisite knowledge and with the intent that the principal
7  may avoid or escape from arrest, trial, conviction, or
8  punishment. People v. Duty, 269 Cal.App.2d 97, 100-01 (1969). Any
9  kind of overt or affirmative assistance to a known felon to
10 conceal the crime or elude punishment falls within the scope of
11 the statute, including an affirmative falsehood to a public
12 investigator, made with intent to shield the perpetrator of the
13 crime. Id. p. 103. In determining the knowledge and intent of the
14 aider, the jury may consider such factors as his possible
15 presence at the crime or other means of knowledge of its
16 commission, as well as his companionship and relationship with
17 the principal before and after the offense. Id. p. 104. Likewise,
18 all the pertinent circumstances may be considered together in
19 order to draw inferences regarding aid and intent. See, In re
20 I.M., 125 Cal.App.4th 1195, 1203-05 (2005) (where the evidence
21 considered regarding intent included the defendant's conduct in
22 being present with the perpetrator of the felony, cultural
23 factors such as gang habits and membership, and running away with
24 the perpetrator, which suggested knowledge of guilt and fear of
25 apprehension).

26      Here, Plaintiff was seen in the presence of her son, a man
27 believed to be the perpetrator of a murder, despite the warning
28 having been given to her. Plaintiff stayed at the apartment for

the remainder of the day. The man, who was identified as Tao, was with his girlfriend and mother at the home of his girlfriend, her parents, and the daughter of the perpetrator and the girlfriend; he was wearing clothing which covered much of his head and some of his face and thus functioned to conceal his identity to some extent. He conversed with the Plaintiff for a minute. The man was observed repeatedly entering and leaving the apartment. They all walked off together. At some point, the man ran, removed his sweatshirt, and succeeded in eluding the officers.

It was objectively reasonable for an officer to believe that Plaintiff was present; permitted or participated in permitting the perpetrator to enter the residence repeatedly and thus conceal himself; accompanied him in an effort to leave the vicinity, which, in view of the family relationship among those present at the apartment, was an area which could be expected to be watched by the authorities and to have presented a risk of apprehension; and made no apparent effort to help the authorities after the man ran. A reasonable officer could believe that given the totality of the circumstances, Plaintiff had given affirmative aid to a known perpetrator with the intent to aid him in evading apprehension.

The Court notes that Officer Casillas concluded that in proceeding to investigate and obtain a warrant, Defendants Skinner and Merced Police Department acted within the standard of care expected of police officers in seeking a warrant before a magistrate. Further, in his deposition, Casillas opined that the facts relied on by Skinner in the affidavit constituted probable cause.

Plaintiff claims there is an issue as to whether or not Skinner was told by Martin that two agents of DOJ had identified the man with Plaintiff as Tao and whether Martin told Skinner about the anonymous phone call. Only one identification shows up in the affidavit (Romero's, not Cardwell's), and the anonymous telephone calls were not mentioned. Even if Skinner was not told of a second identification, Skinner was told of Romero's identification, which was the one mentioned in the affidavit for the arrest warrant and which further was sufficient to support a reasonable belief that Tao was with Plaintiff.

Plaintiff also characterizes Skinner's deposition testimony as being to the effect that in preparing the warrant application, he relied on only one fact, namely, that Martin told Skinner that Plaintiff had been seen in front of the apartment with her daughter and her granddaughter with a man in a black hooded sweatshirt. Skinner's testimony was that the way Martin knew that Plaintiff had aided and assisted Tao for Gray's murder was "[f]rom what went on earlier that morning." (Skinner Dep. p. 79.) When asked if Martin had told him that, Skinner replied that he did not remember the exact words; when asked what had gone on earlier in the morning, Skinner replied that Plaintiff was seen with Tao by Romero. (Id.) Further questions concerning other matters, including the surveillance, the execution of the warrant and unrelated facts concerning Erika Rivera, followed. (Id. pp. 79-81.) Later in the deposition Skinner was asked if there was anything else significant about "the event" he wanted to tell Plaintiff's counsel that counsel had not asked him; he replied in the negative. (Id. p. 81.) Given the content and context of

1  Skinner's testimony, it appears that Skinner's testimony did not

2  amount to a representation that the only fact relied on in

3  issuing the warrant was Romero's observations; rather, it was

4  more of a general description of Martin's communication with

5  Skinner. Skinner's deposition and his affidavit clearly reveal

6  that at the least he relied on reports of witnesses to the

7  killing of Gray; Skinner's own knowledge of what had taken place

8  that day; Romero's identification, which was communicated to

9  Skinner by Romero independently of Skinner's conversation with

10 Martin; and information regarding Warnke's contact with

11 Plaintiff. (Skinner Dep. pp. 30-31; Affidavit.)

12     As to the first anonymous telephone call, even assuming that

13 Skinner was not told of the anonymous telephone call or calls,

14 the other information relied upon constituted probable cause to

15 arrest. Further, given the totality of the facts and

16 circumstances, there was ample basis independent of the first

17 call to warrant a belief that Plaintiff had been or was helping

18 Tao leave the area or arrange his transportation out of the area

19 at the time.

20     Accordingly, the Court concludes that there was probable

21 cause for the arrest warrant.

22          B. <u>False Facts and Malice</u>

23     Plaintiff argues that she has raised triable issues of fact

24 regarding whether or not Martin and/or Skinner intended her to be

25 falsely arrested and whether Skinner intentionally obtained an

26 excessive bail of $500,000.00.

27          1. <u>Intention Falsely to Arrest</u>

28     The Court has previously rejected Plaintiff's assertion that

30

Skinner relied only on the observation of Plaintiff with Tao.

Plaintiff points to a variety of other facts in an effort to raise an issue of fact as to Skinner's intent in seeking the warrant. Plaintiff offers numerous other facts pertaining to the surveillance (see Pltf.'s Sep. Stmt., items 34-68, 74-75, 77), some of which are summarized elsewhere herein. Plaintiff cites to portions of the depositions of Agent Cardwood and Defendants Romero and Skinner reflecting that at the time of Romero's observations, Romero was relieving Cardwood's team, although Romero's team members were not yet in the surveillance positions; they learned that there was an anonymous telephone call saying Tao was in the area where his girlfriend lived; Romero saw a man in a black hooded sweatshirt covering the sides and top of the face down to the forehead; from a distance of eighty to 100 yards Romero saw Tao and his mother appear at the apartment front door, identifying the man from a picture; the man and Plaintiff stood and talked a minute; the man went inside for thirty seconds, came out and talked to two black men and a woman, then returned to the apartment for another thirty seconds, and then came out and walked on the sidewalk towards Midge Street; Jamilih Graham (Tao's girlfriend), Plaintiff's three-year-old granddaughter, and Plaintiff also walked along the same sidewalk towards Midge Street; law enforcement personnel saw a man in the sweatshirt run to the second floor landing of an apartment building, remove the shirt and drop it on the landing; and law enforcement personnel numbering approximately fifty arrived, attempted to find and arrest the man, but never saw him again despite having set a perimeter. Romero told unidentified Merced Police Department

personnel later in the day that the man in the sweatshirt was Tao, who had been with his mother. Cardwood was later unable to identify as Tao a picture of Tao as he actually looked on the day of the incident.

Further, Plaintiff and Diana Smith, a paralegal, declared that the man in the sweatshirt was not Tao, but was instead a man named Gustavo Reyes who had an outstanding warrant or warrants for his arrest when he ran on April 16, 2004. Defendants object on grounds of hearsay, irrelevance, and lack of foundation to Smith's statement that she had determined that Gustavo Reyes was not in custody on April 16, 2004 and was not arrested until June 2004 from charges stemming from April 11, 2004; they object on hearsay grounds to the statement that he had cases prior to 2004 with case numbers MF28972, MM18129, MM176998, and MM181760.

Hearsay is defined as a statement made by one other than the declarant testifying at the current hearing, which is offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801. Smith's reference to cases and case numbers indicates that she obtained the information about Reyes' custody and cases from some unidentified data base. A "statement" within the meaning of the hearsay rule includes an oral or written assertion. Fed. R. Evid. 801(a); Advisory Comm. Note (1972). Out-of-court documents reflecting data constitute statements of data. Pelster v. Ray, 987 F.2d 514, 525 (8th Cir. 1993). Here, the basis of Smith's knowledge is not set forth, but it does not appear logically possible that Smith obtained the information from a source that did not constitute oral or written assertions. Accordingly, the Court sustains the objection and excludes Smith's declaration.

Further, Defendants' objection on the basis of lack of foundation (personal knowledge in this case) is well taken. Subject to the provisions relating to expert opinion testimony (Fed. R. Evid. 703), a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. The burden is on the proponent to establish personal knowledge to the extent that a reasonable trier of fact could believe that the witness had personal knowledge about the fact. United States v. Joy, 192 F.3d 761, 767 (7th Cir. 1999). Personal knowledge must be established by admissible evidence, including the witness's own testimony or extraneous sources. Fed. R. Evid. 602; United States v. Lake, 150 F.3d 269, 273 (3d Cir. 1998). Personal knowledge consists of what a witness actually directly observed or perceived through his or her own senses. Fed. R. Evid. 602, Adv. Comm. Notes (1972). Thus, both opportunity to observe and actual observation must be established. McCrary-El v. Shaw, 992 F.2d 809, 810-11 (8th Cir. 1993). Further, the source of the knowledge must be disclosed; it is not sufficient for a witness merely to say that he or she is aware of a fact. Ward v. First Federal Savings Bank, 173 F.3d 611, 617-18 (7th Cir. 1999) (mere statement that a witness was aware of something was held to be insufficient to establish personal knowledge to render the evidence admissible in connection with a summary judgment motion). Personal knowledge may include inferences so long as they are appropriately grounded in personal observation and first-hand experience, United States v. Joy, 192 F.3d 761, 767 (7th Cir. 1999).

Here, although it is reasonable to infer that some

1  documentary source was used, the source is not identified. The

2  basis for Smith's knowledge is not established. Smith's

3  assertions are thus also excluded because a foundation is

4  lacking.

5      The relevance objection to Smith's information regarding

6  Reyes' custodial status is overruled; evidence is relevant if it

7  has any tendency to make the existence of any fact that is of

8  consequence to the determination of the action more probable or

9  less probable than it would be without the evidence. Fed. R.

10 Evid. 401. The evidence tends to demonstrate that the

11 observations of Romero and Cardwood of the man in the sweatshirt

12 were incorrect.

13     Even though Smith's declaration is excluded, Plaintiff

14 herself declared that she had not communicated with, seen, or

15 been informed by intermediaries regarding her son between the

16 shooting and her arrest, and she did not take any action in that

17 time to arrange transportation or to do anything else to help her

18 son. She was not with her son when the police chased Gustavo

19 Reyes; she had gone to the apartment at Midge Street to visit her

20 granddaughter, and Reyes, whom Plaintiff knew as Tao's friend,

21 happened to arrive; his visit did not have anything to do with

22 Plaintiff or assisting her son as far as Plaintiff knew. (Decl.

23 p. 2.) Reading Plaintiff's declaration liberally, it raises an

24 issue of fact as to whether or not the man in the sweatshirt was

25 Tao.

26     That Romero might have been mistaken as to the

27 identification does not vitiate probable cause because under all

28 the circumstances, it was reasonable for Romero, who was able to

34

see the face of the man in the sweatshirt, to have identified Tao from photographs that he had recently observed.

As to whether an issue of credibility is present, it is established that a general challenge is insufficient to raise an issue of fact regarding credibility; rather, specific facts must be set forth that raise an issue of fact. <u>Department of Commerce v. United States House of Representatives</u>, 525 U.S. 316, 330-31 (an expert's mere statement that another expert's assertion was of dubious credibility, or that the latter used outdated data, unsupported by specific facts, held not to raise a genuine issue of material fact regarding the subject of the expert opinions); <u>National Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.</u>, 701 F.2d 95, 96-97 (9th Cir. 1983) (assertions of bias of witnesses based on interests identical with a party, and of a dispute as to the intent of parties to an ambiguous contract, were insufficient to raise a genuine issue of material fact as to interpretation absent some evidentiary support). A mere desire to cross-examine witnesses or a hope to undermine their credibility at trial is not sufficient to avoid summary judgment. <u>National Union Fire Ins. Co.</u>, 701 F.2d at 96-97.

Here, Romero's identification of the person with Plaintiff was communicated to Skinner. Romero, an officer, testified that he had a clear view of the person from 150 feet, saw the person's face, and recognized it from pictures. Romero was secure with the identification.

As to Skinner, there is no evidence tending to show that Skinner was aware of any circumstances that would render Romero's identification unsound or that he was aware of any mistake on the

part of Romero. Skinner testified that Romero had told him that
Romero got a good look at both Plaintiff and Tao. (Dep. of
Skinner, p. 77.) Even if one interprets Plaintiff's declaration
to indicate that it was Reyes and not Tao present with her, the
evidence establishes at best a mistake on the part of Romero that
was apparently unknown to Skinner. A reasonable fact finder could
not infer simply from a mistake or lapse of judgment of Romero
that Skinner's reliance on Romero's apparently sound
identification was in bad faith or was intentionally false. See,
McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir.
1998) (where there was no evidence of a basis for doubting
sincerity at the time of an articulated motivating reason for an
employment action, the reason was not converted into pretext
merely because, with the benefit of hindsight, it turned out to
be poor business judgment); Metzler v. Federal Home Loan Bank of
Topeka, 464 F.3d 1164, 1178-79 (9th Cir. 2006) (an assertion that
an employer's time estimates were unreasonable and thus a basis
for a retaliatory motive for later termination may have shown a
mistake but did not raise a genuine issue of material fact where
undisputed evidence in the record revealed that the estimates had
been reviewed for reasonableness and approved by others).

Plaintiff argues that the fact that Skinner asked for
$500,000 in bail demonstrates an intent falsely to arrest
Plaintiff or malice. Defendants argue that the bail request was
made only after the warrant issued, but the affidavit itself
shows that $500,000 bail was requested by Skinner. This evidence
warrants an inference that the bail was requested before the
warrant issued.

Martin testified that he did not discuss with Skinner how to set the bail at all; it was Skinner's decision to ask for the amount set. (Dep. pp. 26-27.)  There was no specific bail section for a violation of Cal. Pen. Code § 32; the bail schedule indicated that for unspecified offenses for which no presumptive bail was specified in the schedule, the presumptive bail should be set according to state prison top term potential; it listed specific prison terms, and for homicide listed $500,000.00 as the amount. However, it was not thought that Plaintiff committed homicide. (Dep. of Martin pp. 27-28.)

It is established that one who is falsely arrested, imprisoned, and prosecuted may obtain damages for the period of arrest until the lawful process (such as filing an information or an indictment) begins. Laible v.Superior Court, 157 Cal.App.3d 44, 47-48 (1984). Plaintiff claims that she was in custody for seven days.

The only evidence regarding bail submitted with respect to the motion of Defendants City and officers is that in praying for the warrant of arrest, Skinner prayed "that bail be set at $500,000." (Affid. p. 2.) Without further evidence, there is no context within which to evaluate the significance of the amount of bail. Given the state of the evidence, this does not warrant an inference of intent to arrest falsely or malice.

The transcript of Skinner's deposition lodged in connection with the motion of Defendant Romero (but not introduced with respect to the motion of Defendants City, Police, and Officers) reveals that Skinner had never seen a felony bail schedule but had heard that it existed; what he did as a common practice and

37

thus was sure that he had done so in Plaintiff's case was to call the Merced County Jail, and they would tell him the bail amount; he did not know how they obtained the information.(Dep. of Skinner, pp. 59-65.) He was sure that they told him some amount, but he did not know if it was half a million dollars. When asked where the figure of half a million dollars came from, he responded, "I think in combination of the amount I was told by the jail and myself." (Id. p. 66.) He further explained that as to the amount that they told him, he did not know if he put two, accessory or homicide together; he himself just put the amount they told him in there. (Id. p. 67.) He could not recall what exact amount of bail was for accessory, and he knew that there was some type of bail for homicide, but he did not know what it was. He did not know if the jail told him that the bail for accessory after the fact of homicide was as high as half a million dollars; he could not remember if that was what they gave him or not. (Id. pp. 68-69.) He figured it was an appropriate bail because Plaintiff had assisted her son, who in turn had killed Officer Gray; he never saw that the amount was a little high. (Id. p. 69.) Before Plaintiff's case, he had never prepared a warrant for, or arrested, one accused of being an accessory after a homicide. (Id. p. 65.)

Even if this evidence were considered, it permits an inference of ignorance, mistake, negligence, or imperfect judgment, but it does not warrant an inference of bad faith or malice.

Likewise, the Court rejects Plaintiff's argument that the circumstances of the surveillance and chase of the man in the

38

1  sweatshirt warrant an inference that Romero or Skinner must have
2  known that it was not Tao or otherwise intended falsely to arrest
3  Plaintiff. The circumstances warranted a reasonable inference
4  that the chase was vigorous but unsuccessful. However, there is
5  no evidentiary basis for a conclusion that it was insincere,
6  malicious, or otherwise intended to result in a false arrest of
7  Plaintiff or any other person. It is mere speculation to conclude
8  from Tao's not being apprehended that the man in the black
9  sweatshirt was not or could not have been Tao, or that Romero or
10 Skinner or others involved must necessarily have known that it
11 was not Tao.

12      With respect to Martin, Plaintiff has not set forth evidence
13 warranting an inference that Martin participated in obtaining
14 Plaintiff's arrest warrant or arrest with knowledge of any
15 falsity of any identification or other evidence, or with any
16 intention falsely to arrest her. There is no evidence raising an
17 issue of credibility with respect to Martin's good faith.
18 Plaintiff notes the unusual circumstances of the first anonymous
19 telephone call on the evening of Gray's murder and argues that
20 they warrant an inference that Martin intended falsely to arrest
21 Plaintiff. However, there is no evidence that Skinner was
22 informed of the first call or that the first call was included in
23 the circumstances upon which issuance of the warrant was based.
24 Further, the evidence in context is not such that an inference of
25 improbability or impossibility is warranted; the record does not
26 present a basis warranting an inference that the likelihood of
27 such a call being received was so low that it reflects on
28 Defendant Martin's credibility. Further, it is undisputed that

39

1  Martin testified that he simply held on to that generic

2  information and that Plaintiff was already being watched. (Dep.

3  of Martin, pp. 87-89.) As to the second call, this information

4  was broadcast and did not emanate from Martin. (Romero Dep. p.

5  67.) Plaintiff has not produced evidence warranting an inference

6  that Martin was dishonest with respect to the information he

7  received or transferred or that he otherwise harbored an intent

8  falsely to arrest Plaintiff.

9      The state of mind of Defendant Romero will be discussed in

10  more detail in connection with Defendant Romero's own motion.

11              2. Absence of Malice

12      Cal. Civ. Code § 43.55[3] provides:

13      (a) There shall be no liability on the part of, and no
        cause of action shall arise against, any peace officer
14      who makes an arrest pursuant to a warrant of arrest
        regular upon its face if the peace officer in making
15      the arrest acts without malice and in the reasonable
        belief that the person arrested is the one referred to
16      in the warrant.
        (b) As used in this section, a "warrant of arrest
17      regular upon its face" includes both of the following:
        (1) A paper arrest warrant that has been issued
18      pursuant to a judicial order.
        (2) A judicial order that is entered into an
19      automated warrant system by law enforcement or court
        personnel authorized to make those entries at or near
20      the time the judicial order is made.

21  This section does not preclude liability on the part of an

22  officer who gave false information in order to obtain a warrant

23  or obtained the arrest warrant if the action was otherwise

24  malicious or without a reasonable belief in the arrestee's

25  identity. Harden v. San Francisco Bay Area Rapid Transit Dist.,

26  215 Cal.App.3d 7, 14-15 (1989).

27

28
    [3] Until 1986, § 43.55 was § 43.5(a). Cal. Stats. 1945, ch. 1117, p. 2126, § 1; Cal. Stats. 1986, ch. 248, § 15.

"Malice" within the meaning of § 43.55 has been described as follows:

> Malice may be proved by circumstantial evidence, and is defined as "that attitude or state of mind which actuates the doing of an act for some improper or wrongful motive or purpose. It does not necessarily require that the defendant be angry or vindictive or bear any actual hostility or ill will toward the plaintiff." (BAJI No. 6.94.)

Laible v. Superior Court, 157 Cal.App.3d 44, 53 (1984). Further, knowingly or recklessly giving false or materially incomplete information to the police with the intent to induce an arrest also suffices to establish malice. Harden v. San Francisco Bay Area Rapid Transit Dist., 215 Cal.App.3d 7, 15 (1989).

Here, Plaintiff has not provided evidence that raises a genuine issue of material fact as to malice with respect to Martin or Skinner. With respect to their awareness and use of the information constituting probable cause to arrest, there is no evidence that there was any knowledge of falsity, any circumstances sufficient to put them on notice of a risk of falsity, or any improper or wrongful motive or purpose. The evidence warrants an inference that Martin and Skinner undertook to procure an arrest warrant because there was probable cause to believe that Plaintiff had committed a public offense, and because they reasonably believed Plaintiff had committed the offense. As to Skinner's request for $500,000 bail, under the circumstances, it does not warrant an inference of an improper purpose, such as to keep Plaintiff in jail as long as possible.

As to Defendant Romero, again, his state of mind will be considered in connection with his own motion. It is sufficient to state at this juncture that there are no circumstances present

that warrant an inference that Romero believed or knew that his identification was erroneous or that otherwise raise an issue of fact as to Romero's credibility regarding his reasonable and good faith reliance on his observations.

C. <u>Liability of Defendants City and Police Department</u>

Defendants argue that pursuant to Cal. Govt. Code § 815.2(b), neither Defendant City nor Defendant Police is liable for false imprisonment.

Cal. Govt. Code § 815.2 provides:

> (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.
> (b) <u>Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.</u>

(Emphasis added.) Here, Defendants City and Police would not be liable for false arrest. Although Plaintiff is correct in maintaining that Cal. Govt. Code § 820.4 specifically provides that an employee is not immune for liability for false arrest or false imprisonment, the other statutory provisions mentioned hereinabove (Cal. Civ. Code § 43.55 and Cal. Pen. Code § 847) specifically provide for nonliability for arrests made upon probable cause, lawful process with a reasonable belief in the lawfulness of the arrest, and with an absence of malice.

The Court concludes that Plaintiff has not produced evidence raising a genuine issue of material fact with respect to any Defendant's liability for false arrest and imprisonment of Plaintiff. There is no issue concerning whether or not Officers

1  Martin or Skinner proceeded in good faith and in reasonable

2  reliance on reliable information constituting objective probable

3  cause and with an absence of wrongful purpose or intent or

4  malice. There is no evidence raising a genuine issue of fact

5  regarding whether or not Defendants Dabney and Sterling

6  reasonably relied on a valid warrant based on probable cause in

7  proceeding to interrogate Plaintiff after arrest. Further, as

8  will be discussed in more detail in connection with Defendant

9  Romero's motion, there is no evidence raising a genuine issue of

10  fact concerning Romero's belief, good faith, and reasonable

11  reliance on his observations and identification of Plaintiff and

12  Tao.

13       V. <u>False Imprisonment in the Form of Delay in Processing</u>

14       As the Court noted in its order of May 13, 2005, a cause of

15  action under California law exists for damages for false

16  imprisonment in the form of unreasonable, unnecessary delay in

17  taking an arrested person before a magistrate. Cal. Pen. Code §§

18  821[4], 825[5]; <u>Dragna v. White</u>, 45 Cal.2d 469, 472-73 (1955) (noting

19  that a delay of less than forty-eight hours could be

20  unnecessary). Damages are awarded for the amount of false

21  imprisonment that occurs after the period of necessary or

22  reasonable delay has expired. <u>Id.</u> p. 473.

23       Defendant argues that Plaintiff's claim for unnecessary

24  delay was not included in the claim to the public entity.

25  _____

26       [4] Section 821 requires that if the offense charged is a felony pursuant to a warrant, the officer making the
    arrest must take the defendant before the magistrate who issued the warrant or some other magistrate of the same

27  county.

28       [5] Section 825 provides that with certain exceptions, a defendant shall in all cases be taken before the
    magistrate without unnecessary delay and, in any event, within forty-eight hours after his or her arrest.

1  However, as previously noted, it is the basic facts and not the
2  precise legal theories involved that must be set forth in a tort
3  claim due to the fact that the purpose of filing a tort claim is
4  to provide notice to the public entity. The basic facts mentioned
5  in the tort claim concerned the legality of Plaintiff's arrest,
6  imprisonment, and criminal charges. A processing delay is part
7  and parcel of the arrest and imprisonment mentioned in the tort
8  claim--the essential factual matters upon which the causes of
9  action are based. Accordingly, the claim for delay in processing
10 and releasing Plaintiff is not barred by a failure to file a tort
11 claim.

12     The moving Defendants argue that there is no evidence that
13 Plaintiff was held in custody by Defendants, and thus they cannot
14 be liable for the processing delay. Under California law, all who
15 assist or take part in the commission of a false imprisonment are
16 joint tortfeasors and may be joined as defendants without an
17 allegation or proof of a conspiracy. <u>Harden v. San Francisco Bay</u>
18 <u>Area Rapid Tarnsit Dist.</u>, 215 Cal.App.3d 7, 15 (1989) However,
19 there is no genuine issue of material fact concerning the
20 liability of Martin or any of the Defendant Officers for false
21 arrest or imprisonment. Plaintiff has not produced evidence
22 raising an issue of fact as to the participation by the City
23 Defendants in the unlawful imprisonment, including the aspect of
24 it that concerns any delay in processing Plaintiff.

25     Therefore, the moving City Defendants have established that
26 they are entitled to judgment on Plaintiff's claim against them
27 for false arrest or false arrest.

28     VI. <u>Abuse of Process</u>

44

1    Defendants City, Police, and officers argue that Plaintiff
2 did not address this cause of action in her tort claim; further,
3 Plaintiff did not present evidence creating an issue of fact
4 regarding Defendants' liability for this tort, and in any event,
5 Defendants are entitled to immunity.

6    In California the tort of abuse of process consists of the
7 following elements: 1) the defendant used a legal procedure
8 pursuant to judicial authority; 2) defendant intentionally used
9 the legal procedure to achieve an improper purpose; 3) the
10 plaintiff was harmed; and 4) the defendant's conduct was a
11 substantial factor in causing plaintiff's harm. Coleman v. Gulf
12 Insurance Group, 41 Cal.3d 782, 792 (1986); Adams v. Superior
13 Court, 2 Cal.App.4th 521, 530-31 (1992); see, CACI 1520 (January
14 2006). The term "process" has been broadly defined to include the
15 entire range of procedures incident to litigation. Younger v.
16 Solomon, 38 Cal.App.3d 289, 297 (1974). It has been held that
17 there must be a wilful act in the use of the process not proper
18 in the regular conduct of the proceeding that is subsequent to
19 the obtaining or seeking the process. Siam v. Kizilbash, 130
20 Cal.App.4th 1563, 1579 (2005).

21    Plaintiff argues that the abuse of process consists of the
22 arrest warrant and $500,000 bail, which Plaintiff alleges were
23 used by Defendant Police intentionally for the improper purpose
24 of keeping Plaintiff in jail as long as possible.[6]

25

26    [6] The Court notes that Defendant Skinner testified that after preparing
   the warrant, he did not have any more to do with the incident as far as
27 arresting Plaintiff. (Dep. p. 80.) Further, the Court notes that Plaintiff has
   not produced evidence concerning the length or circumstances of her
28 incarceration.

45

1    Plaintiff's tort claim expressly referred to false arrest,

2 false imprisonment, and false criminal charges made in violation

3 of state and federal constitutional rights. The basic facts set

4 forth in the claim were sufficient to put the Defendants on

5 notice of a claim of abuse of process.

6    Initiation of the criminal process for an improper purpose,

7 as for debt collection, has been recognized as an abuse of

8 process. <u>See</u>, Klein, Use of Criminal Process to Collect Debt as

9 Abuse of Process. 27 A.L.R.3d 1202. Here, there is no issue of

10 fact as to the presence of probable cause and the reasonableness

11 and good faith of Martin or of any defendants in making and

12 communicating observations and in participating in obtaining the

13 warrant. As previously discussed, there is an insufficient

14 context within which to warrant an inference that Skinner's

15 seeking $500,000 bail was intentionally excessive or was

16 unlawful, improper, or otherwise motivated by an improper purpose

17 or desire to inflict any injury or harm upon Plaintiff.

18    With respect to immunity, Defendants argue that pursuant to

19 statute, the police officers and the entity that employed them

20 are immune from liability.

21    Cal. Govt. Code § 821.6 provides:

22       A public employee is not liable for injury caused
         by his instituting or prosecuting any judicial or
23       administrative proceeding within the scope of his
         employment, even if he acts maliciously and without
24       probable cause.

25 It is established that officers who improperly investigate the

26 facts and thereby obtain a warrant and criminal prosecution later

27 found to be groundless are employees of a public entity who are

28 subject to this immunity; because they bring about the

institution of the lawsuit, they are intended to be covered by the broad statutory immunity. Johnson v. City of Pacifica, 4 Cal.App.3d 82, 85-88 (1970). Investigation is considered an essential step towards the institution of formal proceedings and thus is cloaked with immunity. Baughman v. State of California, 38 Cal.App.4th 182, 190-192 (1995) (citing Amylou R. v. County of Riverside, 28 Cal.App.4th 1205 (1994) (immunity from liability for tort of conversion from destruction of property while executing a search with a warrant)).

Here, the actions of the City's officers in investigating and obtaining a warrant were related not to effectuating the arrest, but rather to instituting the judicial proceedings. Cf. Vivell v.City of Belmont, 274 Cal.App.2d 38, 39-40 (1969). Thus, the City's officers were cloaked with absolute statutory immunity for their actions.

Cal. Govt. Code § 815.2 states:

> (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.
> (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Because the City officers were immune, Defendants City and Police are also not liable for Plaintiff's claim of abuse of process.

Plaintiff claims that Cal. Govt. Code § 822.2 provides for an exception to the immunity of § 821.6. Section 822.2 states:

> A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud,

47

1  corruption or actual malice.

2  "Malice" within the meaning of § 822.2 has been defined as a

3  conscious intent to deceive, vex, annoy or harm the injured

4  party. Schonfeld v. City of Vallejo, 50 Cal.App.3d 401, (1975)

5  (overruled on another point in Morehart v.County of Santa

6  Barbara, 7 Cal.4th 725, 736-37 (1994)). As previously discussed,

7  Plaintiff has not presented evidence warranting an inference that

8  in making any representation, Officer Skinner acted with such an

9  intent or with actual fraud or corruption. Further, Plaintiff has

10 not brought to the Court's attention any evidence that Officers

11 Sterling or Dabney made any representations, harbored any malice,

12 or were guilty of actual fraud or corruption.

13      As to Defendant Romero, pursuant to the analysis set forth

14 in connection with his motion, there is no genuine issue of

15 material fact as to his good faith belief in Tao's identity or

16 the reasonableness of his identification. Even if Romero could be

17 considered a participant in the decision to charge, there is no

18 genuine issue as to his liability.

19      Therefore, Defendants have shown that they are entitled to

20 judgment on Plaintiff's claim for abuse of process.

21      VII. Claim pursuant to 42 U.S.C. § 1983

22      Defendants assert various grounds as invalidating

23 Plaintiff's civil rights claim.

24      Plaintiff does not oppose Defendants' assertion that

25 Plaintiff cannot support a claim of excessive force. (Opp. p.

26 14.)

27      However, Plaintiff's civil rights claim also includes

28 allegations that Defendants deprived her of civil rights as a

48

result of official policy or custom; by deliberate indifference
to the need to train employees adequately and by having training
programs not adequate to train officers to handle unspecified
usual and recurring situations properly; and by exposing
Plaintiff to general conditions of confinement while falsely
imprisoned under conditions that exposed Plaintiff to a
substantial risk of serious harm of which Defendant knew and
disregarded by failing to take reasonable measures to correct in
the performance of their official duties. (FAC ¶¶ 45-46, 48.)

The Civil Rights Act under which this action was filed
provides:

> Every person who, under color of [state law]...
> subjects, or causes to be subjected, any citizen of the
> United States... to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution... shall be liable to the party injured in
> an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983. To state a claim pursuant to § 1983, a
plaintiff must plead that defendants acted under color of state
law at the time the act complained of was committed and that the
defendants deprived the plaintiff of rights, privileges, or
immunities secured by the Constitution or laws of the United
States. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir.
1986). The statute plainly requires that there be an actual
connection or link between the actions of the defendants and the
deprivation alleged to have been suffered by the plaintiff. See,
Monell v. Department of Social Services, 436 U.S. 658 (1978);
Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held
that "[a] person 'subjects' another to the deprivation of a
constitutional right, within the meaning of section 1983, if he

1  does an affirmative act, participates in another's affirmative
2  acts or omits to perform an act which he is legally required to
3  do that causes the deprivation of which complaint is made."
4  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

5       In order to state a claim for relief under section 1983,
6  plaintiff must link each named defendant with some affirmative
7  act or omission that demonstrates a violation of plaintiff's
8  federal rights. A local governmental unit may not be held
9  responsible for the acts of its employees under a respondeat
10 superior theory of liability; a municipality could be liable for
11 its own actions in the nature of policy or custom. See Bd. of
12 County Commissioners v. Brown, 520 U.S. 397, 403 (1997).

13                    A. Constitutional Violation

14      Defendants argue that Plaintiff's claim against the City of
15 Merced and the Merced Police Department are without merit because
16 Plaintiff has not presented evidence raising a genuine, triable
17 issue of fact with respect to any individual officer's violation
18 of any of her federally protected civil rights.

19      Plaintiff claims that the gravamen of her civil rights claim
20 is false imprisonment accompanied by Plaintiff's attack on the
21 validity of the warrant pursuant to which Plaintiff was arrested;
22 she claims that the Fourth and Fourteenth Amendments support her
23 theory of liability. (Opp. p. 14.)

24      In Baker v. McCollan, 443 U.S. 137 (1979), cited by
25 Plaintiff, the plaintiff alleged a § 1983 claim because he had
26 been mistakenly identified and was arrested by Defendants, a
27 county sheriff and his surety, pursuant to a warrant. He claimed
28 that his detention was unreasonably prolonged. It was held that

                                50

1 although there might have been state tort liability, there was no
2 deprivation of constitutional rights because the Fourth Amendment
3 requires a fair and reliable probable cause determination, and
4 the facially valid warrant was issued pursuant to such a
5 determination. Absent an attack on the validity of a warrant, a
6 violation of the right to a speedy trial, or a prolonged
7 detention pursuant to the warrant in the face of repeated
8 protests of innocence, no claim for a violation of the Fourth and
9 Fourteenth Amendments would have been stated. Mere innocence of a
10 charge contained in a warrant does not necessarily constitute a
11 deprivation of liberty without due process of law; a law
12 enforcement official is not required to investigate every claim
13 of innocence independently or to effect an error-free
14 investigation. Id. pp. 143-146.

15    The analysis of probable cause previously set forth reveals
16 that the arrest warrant was based on probable cause. Further,
17 there is no evidence warranting an inference that Martin or
18 Defendants Romero, Skinner, Dabney, or Sterling knew that the
19 arrest was wrongful or were reckless as to the identity of the
20 man in the sweatshirt reasonably believed to be Plaintiff's son.
21 Thus, the arrest was not wrongful in the constitutional sense.

22         B. Policy or Custom

23    Plaintiff argues that Commander Martin, who was in charge of
24 the manhunt for Plaintiff's son, created an official policy or
25 custom to obtain a warrant without probable cause. However, there
26 is no genuine issue of material fact regarding the absence of
27 probable cause. Thus, it cannot be inferred that Commander Martin
28 participated in creating or enforcing an official policy or

1  custom to obtain a warrant without probable cause.

2          C. <u>Training</u>

3      Defendants argue that Plaintiff has not produced evidence
4  warranting an inference that Defendant City is liable for failure
5  to train its officers. A city is liable for failure to train if
6  its nonfeasance amounts to a deliberate or conscious choice by a
7  municipality and evinces in a relevant respect deliberate
8  indifference to the rights of persons with whom police come into
9  contact. <u>City of Canton v. Harris</u>, 489 U.S. 378, 388-89 (1989).
10  If a training program is inadequate, then the question becomes
11  whether it may be considered city policy. <u>Id.</u> p. 390. In light of
12  duties assigned to specific officers or employees, the need for
13  more or different training may be so obvious, and the inadequacy
14  so likely to result in the violation of constitutional rights,
15  that the policymakers can reasonably be said to have been
16  deliberately indifferent to the need, and the failure to train
17  may thus fairly be said to represent a policy of the city. <u>Id.</u> p.
18  390. Further, frequency of police officer's exercise of
19  discretion resulting in violations of constitutional rights may
20  establish deliberate indifference. <u>Id.</u> However, a particular
21  officer's inadequate training would not be enough for liability
22  for failure to train because the officer's shortcoming may have
23  resulted from factors other than a faulty training program, such
24  as occasional negligent administration of training; the mere fact
25  that an accident could have been avoided if an officer had been
26  better trained is likewise insufficient because it does not
27  necessarily reflect upon the adequacy of the program. Further,
28  even adequately trained police officers occasionally make

1  mistakes. <u>Id.</u> p. 391.

2      Here, the previous analysis reveals that the arrest of
3  Plaintiff was not in itself a constitutional violation because
4  there is no issue of material fact as to the absence of probable
5  cause. There is no evidence that further training would have
6  avoided any harm. As to Skinner's choice of $500,000 bail, even
7  if it is inferred that he personally was inadequately trained
8  regarding setting bail, there is no basis upon which to infer
9  that the training program was inadequate. A single instance of
10 inadequate auto theft investigation and use of excessive force
11 did not constitute substantial evidence of inadequacy of either
12 the training or investigation; further, there could be no
13 liability where there was an absence of other evidence of
14 awareness on the part of the municipal employer of any need for
15 other or different training. <u>Merritt v. County of Los Angeles</u>,
16 875 F.2d 765, 770-71 (9th Cir. 1989).

17     Further, there is no basis for concluding that the
18 Defendants made a conscious choice regarding training. There was
19 no expert testimony regarding the training, and there was no
20 obvious inadequacy or other circumstances that would provide
21 constructive notice to Defendants City and Police of
22 unconstitutional conduct.

23     There is no basis for a finding that a policy of inadequate
24 training caused any deprivation. Demonstration of causation is an
25 essential component of failure to train liability, <u>City of
26 Canton</u>, 489 U.S. at 391, and the causal link between the
27 nonfeasance and the actual constitutional violation must be
28 direct, <u>Board of County Commissioners of Bryan County, Oklahoma</u>

1  v. Brown, 520 U.S. 397, 404 (1997) (where the particular

2  municipal action itself was not a violation of federal law, then

3  a single employment decision allegedly effected without adequate

4  screening held not sufficient to establish policy deliberate

5  indifference by the sheriff to a high risk that the hired deputy

6  would use excessive force).

7      Thus, the Court concludes that Plaintiff has not raised a

8  genuine issue of material fact with respect to the Defendants'

9  policy or training officers with respect to identifications,

10  probable cause, or bail setting.

11      Defendants are correct in contending that if there is no

12  violation of constitutional rights by an individual city officer,

13  then there is no liability on the part of the Defendants City and

14  Police. See, City of Los Angeles v. Heller, 475 U.S. 796, 799

15  (1986).

16                  D. Excessive Force during Custody

17      Plaintiff alleged that Defendants used excessive force and

18  exposed Plaintiff to a substantial risk of serious harm of which

19  Defendants were aware but nevertheless failed to take reasonable

20  measures to correct. (FAC ¶¶ 47, 48.) Defendants argue that

21  Plaintiff produced no evidence that any Merced Police officer

22  interacted with Plaintiff in any way while she was confined in

23  the county jail.

24      Plaintiff does not oppose the allegation that she has failed

25  to produce evidence of excessive force. Plaintiff does not

26  address the allegation that there is no evidence of any police

27  interaction with Plaintiff while in custody that exposed her to a

28  substantial risk of serious harm. There being no such evidence,

                                   54

1  Defendants have shown that they should prevail on such a claim.

2      E. Qualified Immunity

3      Defendants argue that even if there was a constitutional

4  violation, the defendants are entitled to qualified immunity

5  because they acted reasonably under the circumstances, and

6  Plaintiff cannot meet her burden of proof to show that Defendants

7  are not entitled to such immunity.

8      Government officials enjoy qualified immunity from civil

9  damages unless their conduct violates "clearly established

10 statutory or constitutional rights of which a reasonable person

11 would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818

12 (1982). In ruling upon the issue of qualified immunity, the

13 initial inquiry is whether, taken in the light most favorable to

14 the party asserting the injury, the facts alleged show the

15 defendant's conduct violated a constitutional right. Saucier v.

16 Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can

17 be made out, the next step is to ask whether the right was

18 clearly established. Id. The inquiry "must be undertaken in light

19 of the specific context of the case, not as a broad general

20 proposition...." Saucier v. Katz, 533 U.S. 194, 201 (2002).

21 "[T]he right the official is alleged to have violated must have

22 been 'clearly established' in a more particularized, and hence

23 more relevant, sense: The contours of the right must be

24 sufficiently clear that a reasonable official would understand

25 that what he is doing violates that right." Saucier, 533 U.S. at

26 202 (citation omitted). In resolving these issues, the Court must

27 view the evidence in the light most favorable to plaintiff and

28 resolve all material factual disputes in favor of plaintiff.

1 Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

2 Qualified immunity protects "all but the plainly incompetent or

3 those who knowingly violate the law." Malley v. Briggs, 475 U.S.

4 335, 341 (1986).

5     Plaintiff argues that she has raised a triable issue of

6 material fact regarding whether or not her constitutional right

7 to be free of unreasonable seizure was violated and whether or

8 not Martin's and Skinner's mistakes were reasonable. Plaintiff

9 argues that a jury should decide whether Romero, Martin, and

10 Skinner knowingly violated the law or were plainly incompetent.

11     With respect to Martin and Skinner, previous discussion

12 shows that there was no evidence to raise an issue of fact

13 regarding whether or not their reliance on Romero's

14 identification was reasonable or in good faith. It must be

15 determined whether a reasonable officer could have believed that

16 the arrest was lawful in light of clearly established law and the

17 information that the officers possessed. Merriman v. Walton, 856

18 F.2d 1333, 1335 (9th Cir. 1988). It is established that with

19 respect to a law enforcement officer's assertion of qualified

20 immunity from liability for Fourth Amendment violations, even if

21 an officer acts unconstitutionally, the officer is entitled to

22 qualified immunity if the officer objectively could have believed

23 that his conduct was lawful. Act Up!/Portland v.Bagley, 988 F.2d

24 868, 871 (9th Cir. 1993) An officer who mistakenly but in good

25 faith and reasonably believes that there is probable cause is

26 entitled to qualified immunity. See, Harris v. Roderick, 126 F.3d

27 1189, 1198 (9th Cir. 1997); Merriman v. Walton, 856 F.2d 1333,

28 1334-35 (9th Cir. 1988).

1    Here, even if Defendants Skinner and Martin might have

2  relied on a mistaken identification, there is no issue as to

3  whether or not their belief was in good faith and reasonable.

4  There is no basis for inferring that they should have known that

5  their conduct was unlawful. Thus, they were entitled to qualified

6  immunity on a claim of an unreasonable seizure in violation of

7  the Fourth Amendment.

8    Likewise, as is analyzed more fully in connection with his

9  separate motion, there is no issue of fact as to whether or not

10  Defendant Romero reasonably and in good faith believed that he

11  had observed Plaintiff with Tao in an effort to conceal and/or

12  aid Tao in resisting apprehension.

13    Accordingly, Defendants City, Police, and Officers are

14  entitled to judgment on Plaintiff's claim of unreasonable search

15  and seizure in violation of the Fourth Amendment based on

16  qualified immunity.

17    In summary, the Court concludes that Defendants City,

18  Police, and Officers Skinner, Dabney, and Sterling have shown

19  that they are entitled to judgment with respect to Plaintiff's §

20  1983 claim based on excessive force or a Fourth Amendment

21  violation in connection with her arrest and imprisonment.

22                  MOTION OF DEFENDANT ELOY ROMERO

23    I. Background of Defendant Romero's Motion

24    Defendant Eloy Romero, an agent and employee of the state of

25  California's Department of Justice Bureau of Narcotics

26  Enforcement, moves for summary judgment, or, in the alternative,

27  for an order adjudicating that the following issues in this

28  action are established without substantial controversy as against

Plaintiff: 1) Plaintiff's failure to present a tort claim to the Victims' Compensation and Government Claims Board (formerly the State Board of Control), which bars the state tort claims against Defendant Romero (claims one through five); 2) Failure of proof of personal involvement of Defendant Romero in any wrongful conduct; 3) the legal insufficiency of conduct of Defendant Romero in identifying a photograph of Plaintiff to constitute a claim for violation of Plaintiff's civil rights; and 4) Romero's entitlement to qualified immunity in connection with his surveillance of Plaintiff's son and his identification of Plaintiff as being present at the scene. Defendant Romero has submitted as exhibits declarations of Defendant Romero and of Marlene Dederick as well as copies of excerpts of deposition transcripts of Defendant Romero, Plaintiff Rivera, Alfredo Cardwood, and Defendants Tommy Martin and Scott Skinner. Defendant Romero has also lodged the complete transcripts of the depositions of Defendant Romero, Plaintiff, Julia Rivera, Marcella Arroyo, Alfredo Cardwood, Scott Skinner, and Tommy Martin.

It is undisputed that Defendant Romero, a special agent supervisor with the California Department of Justice's Bureau of Narcotics Enforcement (BNE), on April 16, 2004, was assigned to lead a BNE team in surveillance of the apartment at Midge Avenue that was believed to be the residence of the parents of Tao's girlfriend and of Plaintiff's granddaughter. Supervising special agent Aflredo Cardwood was leading a Merced Multi-Agency Narcotics Task Force team and was already conducting surveillance at the apartment. Romero and other personnel were given several

1  photographs of Tao. An anonymous call was made that morning to

2  the police department to the effect that Tao was seen at the

3  location. Romero and Cardwood both saw Plaintiff and her son,

4  Tao, walking out of the Midge apartment while under surveillance;

5  they then pursued the suspect. Tao was also positively identified

6  by John Smothers and Jeremy Key, who immediately tried to

7  apprehend Tao, and by John Hoover, all of whom were also assigned

8  to surveillance of the apartment. Cardwood and Romero looked

9  directly at the suspect from approximately fifty to eighty yards

10 away and positively identified him; when Smothers and Keys

11 identified themselves, the suspect looked at them, turned, and

12 fled the scene. Plaintiff said nothing to any officers at the

13 scene, and the suspect evaded apprehension.

14     That day Romero was shown a photograph of Plaintiff, and he

15 identified her as the woman seen at the apartment earlier that

16 day when the suspect was seen and pursued. Plaintiff testified

17 that she visited her son's daughter at the Midge apartment on

18 April 16, 2004, and saw the agents run past her. Romero did not

19 apply for the arrest warrant or participate in the decision to

20 seek the warrant; and he did not participate in the arrest,

21 interrogation, search of Plaintiff's residence, setting the bail

22 amount, the decision to charge Plaintiff, or the conditions of

23 Plaintiff's incarceration or release from custody.

24     Further, it is undisputed that Plaintiff did not file a tort

25 claim with the Victim's Compensation and Government Claims Board

26 (Board of Control).

27     II. <u>Noncompliance with the California Tort Claims Act</u>

28     Plaintiff's state tort claims (assault, battery, false

1  arrest, unnecessary delay in release, and wrongful acquisition of

2  a warrant, arrest, imprisonment and prosecution, styled as an

3  abuse of process claim) are barred because the filing of a tort

4  claim against a public employee's employing public entity is a

5  prerequisite to bringing an action against the employee.[7]

6      Cal. Govt. Code § 945.4 provides that with inapplicable

7  exceptions, no suit for money or damages may be brought against a

8  public entity on a cause of action for which a claim is required

9  to be presented in according with the remainder of the statutory

10  scheme until a written claim has been presented to the public

11  entity and been either acted on by the board or deemed to have

12  been rejected. Cal. Govt. Code § 950.2 provides that with

13  inapplicable exceptions, a cause of action against a public

14  employee or former public employee for an injury resulting from

15  an act or omission in the scope of his employment as a public

16  employee is barred if an action against the employing public

17  entity for such injury is barred.

18      Here, it is undisputed that no claim was brought against the

19  state of California. Further, the declaration of Dederick, who is

20  the custodian of records of the government claims program of the

21  Victim Compensation and Government Claims Board, establishes that

22  no application to present a late claim was presented either.

23  (Decl. p. 3.) Thus, a claim against the employing public entity

24  is barred, and a claim against the public employee is likewise

25  barred. Submission of a claim is a condition precedent under

26  California law to a tort action against either the employee or

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯

28      [7] The Court notes that the employing Agency, the Drug Enforcement Agency, or the state of California, has not been named as a defendant.

60

1  the public entity. <u>Williams v. Horvath</u>, 16 Cal.3d 834, 838
2  (1976); <u>Dennis v. Thurman</u>, 959 F.Supp. 1253, 1264 (C.D.Cal.
3  1997).

4      Accordingly, Defendant Romero is entitled to judgment with
5  respect to Plaintiff's state tort claims.[8]

6      III. <u>Civil Rights Claim against Defendant Romero</u>

7      There is no formal requirement for the exhaustion of state
8  judicial or administrative remedies for claims made under § 1983.
9  <u>Ellis v. Dyson</u>, 421 U.S. 426, 432-33 (1975); a plaintiff need not
10 comply with the requirements of the California Tort Claims Act
11 when bringing a federal civil rights action. <u>Donovan v. Reinbold</u>,
12 433 F.2d 738, 741 (9th Cir. 1970); <u>Lacey v. C.S.P. Solano Medical</u>
13 <u>Staff</u>, 990 F.Supp. 1199, 1206-07 (E.D.Cal. 1997). A failure to
14 comply with California's tort claims requirement does not vitiate
15 any claim of Plaintiff's pursuant to § 1983.

16     Pursuant to the undisputed facts set forth by Defendant
17 Romero in connection with his motion, the only involvement of
18 Defendant Romero in the arrest, imprisonment, and prosecution of
19 Plaintiff was Romero's identification of Tao and Plaintiff as
20 having been together and then leaving the apartment together, and
21 Romero's attempt to apprehend the fleeing suspect. Defendant
22 Romero was not otherwise involved in the obtaining of the arrest
23 warrant, arrest, interrogation, search, setting of bail, decision
24 to charge, or conditions of Plaintiff's incarceration or release
25 from custody. Defendant Romero thus argues that he cannot be
26 liable under § 1983 because he is not personally involved in the

27

28     [8] Because Defendant Romero has shown entitlement to summary adjudication on the tort claims, the Court
       does not reach the question of whether or not Plaintiff's claims should be dismissed as insufficiently pleaded.

1  acts alleged in the civil rights claim pursuant to 42 U.S.C. §

2  1983, namely, use of excessive force in making the arrest,

3  deprivation of rights under official policy or custom, showing

4  deliberate indifference to the need to train and supervise the

5  employees of the other Defendants, use of excessive force in

6  imprisonment, or exposure to the general conditions of

7  confinement. (FAC ¶¶ 44-48.)[9]

8      As previously noted, Defendant Romero cannot be liable for a

9  violation of civil rights pursuant to § 1983 on a respondeat

10 superior theory applied to the actions of others. Although there

11 is no express, particular state of mind requirement for a

12 violation of § 1983, state of mind may be relevant in determining

13 if the conduct of a person acting under color of state law

14 deprived a person of rights, privileges, or immunities secured by

15 the Constitution or laws of the United States. Parratt v. Taylor,

16 451 U.S. 527, 534-35 (1981), overruled in part on other grounds

17 in Daniels v. Williams, 474 U.S. 327 (1986). Depending on the

18 underlying constitutional right involved, merely negligent

19 conduct may not be enough to state a claim. Daniels v. Williams,

20 474 U.S. 327, 329-30, 333-34 (1986) (negligent handling of

21 prisoner's property which resulted in personal injury held not

22

23  [9] Defendant Romero also seems to argue that Plaintiff's allegations are not sufficient to withstand a motion
to dismiss on this claim because the allegations concerning Defendant Romero's involvement in the alleged civil
24  rights violation were vague and conclusory and set forth no facts to support the involvement in any of the conduct of
which the Plaintiff complains. See, Richards v. Harper, 864 F.2d 85, 88 (9th Cir. 1988 (vague allegation that all
25  defendants were somehow involved in a discriminatory selection of clergy for a church, and specification of
generalized blacklisting, malfeasance, failure to help, and retaliation held insufficient); Ivey v. Board of Regents of
26  University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982) (failure to allege specific facts showing defendants'
participation in the alleged discriminatory employment practice other than giving monetary support or general
27  intervention in the operation held insufficient to state a claim). However, Defendant Romero has not moved to
dismiss, but rather has moved for summary judgment or summary adjudication. Because of the Court's resolution of
28  Defendant Romero's motion for summary judgment or adjudication, the Court does not reach the contention
regarding the state of the pleadings.

1  sufficient to constitute a Fourteenth Amendment due process
2  violation).

3       Here, according to Plaintiff's opposition, the
4  constitutional violations claimed by Plaintiff relate to the
5  Fourth Amendment's protections against unreasonable seizures of
6  the person related to the arrest and imprisonment of Plaintiff.
7  (Opp. pp. 6-9.) Plaintiff's claim against Defendant Romero is
8  based on Plaintiff's assertion that Romero lied to assist the
9  police department in obtaining a warrant, and Plaintiff
10 affirmatively states that there is no issue about whether or not
11 Defendant Romero was obligated to investigate further after he
12 provided the identification of Tao and Plaintiff. (Opp. p. 9.)

13      False imprisonment does not become a violation of the
14 Fourteenth Amendment merely because the Defendant is a state
15 official. Baker v. McCollan, 443 U.S. 137, 146 (1979). It is
16 established that it is the presence or absence of objective
17 probable cause, and not the subjective motivation of the
18 arresting officer, that is significant with respect to the
19 reasonableness of a seizure under the Fourth Amendment. Whren v.
20 United States, 517 U.S. 806, 813-14 (1996). A false arrest claim
21 is governed by the Fourth Amendment prohibition against
22 unreasonable searches and seizures rather than the general
23 substantive due process clause because the Fourth Amendment and
24 Fourteenth Amendment provide an explicit textual source of
25 constitutional protection against seizures and their consequences
26 on the part of the state and federal governments. Larson v.
27 Neimi, 9 F.3d 1397, 1399-1401 (9th Cir. 1993). The defense of
28 undertaking an arrest in good faith and with probable cause is

1  still available to officers in a § 1983 action because an officer
2  who arrests someone with probable cause is not liable for false
3  arrest simply because the factual innocence of the suspect is
4  later proved. <u>Pierson v. Ray</u>, 386 U.S. 547, 557 (1967), overruled
5  on other grounds, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>see</u>,
6  <u>United States v. King</u>, 244 F.3d 736, 739 (9th Cir.2001)
7  (reasonable suspicion). To prevail on a § 1983 claim for false
8  arrest and imprisonment, a plaintiff has to demonstrate that
9  there is no probable cause to arrest him or other justification.
10 <u>Cabrera v. City of Huntington Park</u>, 159 F.3d 374, 380 (9th Cir.
11 1998); <u>Dubner v. City and County of San Francisco</u>, 266 F.3d 959,
12 964-65 (9th Cir. 2001).

13      As previously determined, considering the nature and
14 trustworthiness of the evidence of criminal conduct available to
15 the police, the police had probable cause to arrest Plaintiff
16 because the facts and circumstances within their knowledge and of
17 which they had reasonably trustworthy information were sufficient
18 to warrant a prudent person in believing that the suspect had
19 committed or was committing an offense. <u>Beck v. Ohio</u>, 379 U.S.
20 89, 91 (1964). Skinner and Martin reasonably believed that the
21 facts and circumstances of which they had knowledge constituted
22 probable cause to believe that Plaintiff had, with the requisite
23 intent and knowledge, aided her son in evading apprehension. The
24 fact that Plaintiff mounts an attack on the warrant is not
25 determinative because Plaintiff's challenge to the objective
26 basis for the warrant is without legal or factual merit.

27      Plaintiff argues that the evidence raises an issue of fact
28 as to whether or not Defendant Romero lied to the Merced Police

Department and whether he lied "to give the Merced Police Department the facts it needed for its warrant." (Opp. p. 7.)

As previously analyzed, there is no basis for an inference that any of the other officers participating in the arrest warrant or service procedures had an improper motive or purpose.

Likewise, there is no basis for an inference that Defendant Romero had a wrongful motive or an intention to arrest Plaintiff falsely either for the ulterior purpose of imprisoning her for as long as possible without real grounds, or for any other invalid purpose. With knowledge of the anonymous telephone call regarding Tao's presence at the apartment, Defendant Romero observed the face of the man with Plaintiff from a distance of about fifty to eighty yards after having observed several photographs of Tao. He got a good look at Tao when he came out of the apartment from a distance of fifty yards on the clear day. (Dep. pp. 47, 64.) Romero later told Skinner that the person he saw was Tao. (Dep. of Skinner p. 30), and his and his fellow officers' conduct thereafter (drawing weapons and attempting to apprehend the man as he, his girlfriend, and Plaintiff were walking away from the apartment and down or towards a driveway that led to where vehicles were located [Dep. of Romero, pp. 62-67, 70-74, 78, 59, 80]) was consistent with a reasonable belief that the man was Tao. Romero confirmed his identification and then instructed the field supervisor to arrest Tao. (Dep. p. 62.) Romero testified that he told Cardwood that he believed the man was Tao. (Dep. p. 48.) Romero saw the face and mustache as in the photo; hair and weight were concealed due to the bulky black sweatshirt. (Id. pp. 48-49.) Romero and Cardwood correctly identified Plaintiff from

1  relatively contemporaneous observation. Several other trained

2  officers also observed the man and identified him as Tao.[10] Romero

3  testified that he used binoculars to confirm his observations and

4  passed them to Cardwood, who also used them. (Dep. p. 62.) Romero

5  was told by CHP Officer Key and Atwater Police Officer Smothers

6  that they also recognized Tao in the black hooded sweatshirt.

7  (Dep. pp. 70-71, 74.)

8      Plaintiff denies that the man with her was her son and that

9  she aided her son, but she does not contest Romero's

10 identification of her or otherwise claim that she was not at the

11 apartment that day. The only affirmative acts on the part of

12 Defendant Romero shown by the evidence were identifications of

13 Tao and Plaintiff as being together when observed near the

14 apartment and then on the street and driveway moving away from

15 the apartment, and some participation in the hunt for the man in

16 the black hooded sweatshirt.

17     It might be inferred from Plaintiff's declaration that there

18 is an issue of fact as to whether or not the person Romero

19 identified was indeed Tao. However, there are no specific facts

20 set forth by Plaintiff to warrant an inference that the

21 identification was not merely mistaken but rather was

22 intentionally false, or that Romero knew that any person who

23 participated in the process of obtaining the arrest warrant,

24 arrest, prosecution, and/or detention of Plaintiff was proceeding

25 with any knowledge of the falsity or inaccuracy of the

26 identification or of any other fact relied on in obtaining and

27

28

[10] The Court considers the fact that the identifications were made, not that they were necessarily correct.

1 effecting service of the warrant or otherwise detaining or
2 prosecuting Plaintiff.

3     Plaintiff questions Defendant Romero's credibility, but
4 Plaintiff has not cited to evidence, as distinct from bare
5 speculation, that would warrant an inference of intentionally
6 false identification or other intentionally false conduct on the
7 part of Romero. See, Department of Commerce v. United States
8 House of Representatives, 525 U.S. 316, 330-31 (1999); National
9 Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co., 701
10 F.2d 95, 96-97 (9th Cir. 1983); Gasaway v. Northwestern Mutual
11 Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994) (assertions
12 that an affiant's conclusions were self-serving insufficient to
13 raise an issue of fact); see, McKnight v. Kimberly Clark Corp.,
14 149 F.3d 1125, 1129 (10th Cir. 1998). Further, Plaintiff has not
15 raised a genuine issue of fact as to the reasonableness of
16 Romero's identification or of his or others' reliance on that
17 identification.

18     Accordingly, Plaintiff has not raised an issue of fact
19 concerning Defendant Romero's liability for a violation of § 1983
20 concerning obtaining Plaintiff's arrest warrant or the arrest of
21 Plaintiff in violation of the Fourth and Fourteenth Amendments.
22 Defendant Romero is entitled to judgment on the § 1983 claim.

23     XII. Qualified Immunity

24     Defendant Romero argues that he is entitled to qualified
25 immunity as a matter of law.

26     Where the facts are undisputed, as where there is no dispute
27 as to what an official did or did not do, qualified immunity is a
28 question of law for the Court. Act Up!/Portland v. Bagley, 988

1  F.2d 868, 873 (9th Cir. 1993).

2      It was clearly established that an arrest without probable
3  cause is a violation of the Fourth Amendment. It must be
4  determined whether a reasonable officer could have believed that
5  the arrest was lawful in light of clearly established law and the
6  information that the officers possessed. Merriman v. Walton, 856
7  F.2d 1333, 1335 (9th Cir. 1988). It is established that with
8  respect to a law enforcement officer's assertion of qualified
9  immunity from liability for Fourth Amendment violations, even if
10 an officer acts unconstitutionally, the officer is entitled to
11 qualified immunity if the officer objectively could have believed
12 that his conduct was lawful. Act Up!/Portland v.Bagley, 988 F.2d
13 868, 871 (9th Cir. 1993) An officer who mistakenly but in good
14 faith and reasonably believes that there is probable cause is
15 entitled to qualified immunity. See, Harris v. Roderick, 126 F.3d
16 1189, 1198 (9th Cir. 1997); Merriman v. Walton, 856 F.2d 1333,
17 1334-35 (9th Cir. 1988); Anderson v. Creighton, 483 U.S. 635, 640-
18 641 (1987).

19     As previously discussed, there was no issue of fact as to
20 the good faith of Martin or Defendant Skinner or as to whether or
21 not their reliance on any mistaken identification was reasonable.
22 There is no basis for inferring that they should have known that
23 their conduct was unlawful. Thus, they were entitled to qualified
24 immunity.

25     As to Defendant Romero, Plaintiff has not pointed out
26 evidence warranting an inference that he proceeded in bad faith
27 or with any knowledge of any inaccuracy related to the
28 identification or with any wrongful intent with respect to the

1  arrest, questioning, custody, or charging of Plaintiff. Again,

2  even assuming that there is an issue of fact as to the ultimate

3  accuracy of the identification of Tao, there are no other facts

4  supporting an inference that Romero was dishonest or

5  intentionally false in identifying Tao. The circumstances of the

6  identification permitted a reasonable belief that the man was Tao

7  and do not give rise to a contrary inference. Under the

8  circumstances, Romero could reasonably have believed that his

9  conduct was lawful in light of clearly established law and the

10 information the officer possessed. Further, as detailed

11 hereinabove, parties relying on his conduct and the arrest

12 warrant and arrest also could reasonably have believed that their

13 conduct was lawful. See, Guerra v. Sutton, 783 F.2d 1371, 1375

14 (9th Cir.1986) (law enforcement officers may rely upon the

15 representation of a responsible law enforcement officer that a

16 proper warrant exists).

17     The Court concludes that Defendant Romero is entitled to

18 qualified immunity with respect to Defendant's sixth claim

19 pursuant to 42 U.S.C. § 1983.

20 _____ DISPOSITION

21     In summary, the Court concludes that the moving Defendants

22 have shown that they are entitled to judgment as a matter of law

23 on all the claims against them.[11]

24     Accordingly, pursuant to the foregoing analysis, it IS

25 ORDERED that

26     1. The motion of Defendants City of Merced, Merced Police

27 _____

28     [11] In view of this conclusion, the Court does not reach Plaintiff's unnoticed, informal request, set forth in his opposition, with respect to amending the complaint to add Martin as a defendant previously designated as a "Doe."

69

1  Department, and Officers Skinner, Dabney, and Sterling for

2  summary judgment IS GRANTED; and

3     2. The motion of Defendant Eloy Romero for summary judgment

4  IS GRANTED; AND

5     3. The Clerk IS DIRECTED to enter a judgment in favor of

6  Defendants City of Merced, City of Merced Police Department, City

7  of Merced Police Officer Scott Skinner, City of Merced Police

8  Officer Ray Sterling, City of Merced Police Officer Dabney, and

9  Defendant Bureau of Narcotics Enforcement Special Agent

10  Supervisor Eloy Romero, and against Plaintiff Erika Rivera.

11

12  IT IS SO ORDERED.

13  **Dated:   November 15, 2006**                    **/s/ Sandra M. Snyder**
    icido3                                  UNITED STATES MAGISTRATE JUDGE

14